IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SAINAAM INC. d/b/a
LOOKING GOOD/STYLZ,

    Plaintiff,

v.                                                                                                    No. 08-1149

AMERICAN NATIONAL PROPERTY &
CASUALTY COMPANY and
WILLIAM BRANTLEY,

    Defendants.

---

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND
---

The Plaintiff, Sainaam, Inc., d/b/a Looking Good/Stylz, initiated this civil action against Defendants, American National Property & Casualty Company ("ANPAC") and William Brantley, in the Chancery Court of Madison County, Tennessee. The Defendants then removed the case to federal court pursuant to 28 U.S.C. § 1441 and invoked subject matter jurisdiction under 28 U.S.C. § 1332 on the basis of diversity of citizenship. In this Court, the Defendants have filed a motion to dismiss, while the Plaintiff has presented a motion to remand for lack of subject matter jurisdiction. Upon consideration of these pleadings, the Court GRANTS the Plaintiff's motion to remand. Due to a lack of subject matter jurisdiction, the Court refrains from deciding the Defendant's motion to dismiss.

## FACTUAL BACKGROUND[1]

According to the complaint, Sianaam, Inc., is a Tennessee corporation. (Docket Entry ("D.E.") No. 1, Notice of Removal, Ex. 1 Compl. ¶ 1.) The Plaintiff, which is owned by Kishore Shivani, operates a clothing store under the trade name "Looking Good," and is managed by Reginald Hobson. (Id. at ¶ 4.) ANPAC is a Missouri corporation, which issues insurance policies in Tennessee. (Id. at ¶ 2.) William Brantley, a resident of Tennessee, worked for ANPAC as a licensed insurance agent. (Id. at ¶ 3.)

For about seven years, State Farm Insurance Company insured the Plaintiff's business. (Id. at ¶¶ 6, 11.) In the spring of 2004, the Plaintiff's store suffered from a series of burglaries, and Shivani filed several claims with State Farm. (Id. at ¶¶ 8-10.) State Farm paid these claims, but it informed the Plaintiff that it would not renew its policy as of November 6, 2004. (Id. at ¶ 11.) Upon learning that the clothing store's insurance contract would not be renewed, Hobson contacted Brantley at ANPAC about obtaining coverage. (Id. at ¶¶ 13-16.) After questioning Hobson about the store's operation and the recent burglaries, Brantley filled out an insurance application with ANPAC on behalf of the Plaintiff. (Id. at ¶¶ 18-19.)

Brantley then sent the signature page of the application to Kishore Shivani, but the Defendant did not include the complete application. (Id. at ¶¶ 20-21.) After Shivani signed and returned the signature page, his wife, Rhea Shivani, received a call from Hobson. (Id. at ¶ 22.) Hobson told Ms. Shivani that he was not sure whether he fully related the details about the previous thefts to Brantley. (Id.) Rhea Shivani then contacted Brantley and faxed him a letter explaining the details of the burglaries and that State Farm had paid the Plaintiff a total of $20,576 on insurance claims. (Id. at

---

[1]These facts are derived from allegations in the Plaintiff's complaint and will be considered undisputed for the purpose of deciding this motion.

¶¶ 23-25.) Upon Brantley's request, Ms. Shivani later sent a less-detailed second letter summarizing the information in the first letter. (Id. at ¶¶ 26-29.)

ANPAC ultimately issued an insurance policy to the Plaintiff, which covered property damage, loss of business income, and other specified losses. (Id. at ¶ 33.) The Plaintiff paid regular premiums, and ANPAC renewed the policy in both 2005 and 2006. (Id. at ¶¶ 34-35.) Around December 12, 2006, someone broke into the Plaintiff's store and stole some merchandise. (Id. at ¶¶ 36-37.) The Plaintiff filed a claim with ANPAC, which, after conducting a ten-month investigation, denied the claim on May 8, 2007. Later, ANPAC declined to renew the Plaintiff's policy as of October 2007. (Id. at ¶¶ 42-43.)

Sainaam alleges that ANPAC's failure to pay is not justified and constitutes bad faith. (Id. at ¶ 45.) It also claims that Brantley was negligent in the application and underwriting process. (Id. ¶ 59.) In the state lawsuit, the Plaintiff set forth four theories of recovery: breach of contract, violation of the Tennessee Consumer Protection Act, estoppel,[2] and negligence or negligent misrepresentation. (Id. at ¶¶ 47-66.) The Defendants now seek to defend this action in federal court, arguing that, despite the fact that Brantley and the Plaintiff are both residents of Tennessee, federal subject matter jurisdiction is appropriate under the fraudulent joinder doctrine.

The Defendants move to dismiss Defendant Brantley from the lawsuit for any claim based upon a breach of contract with ANPAC under Rule 12(b)(6), Federal Rules of Civil Procedure, for Plaintiff's failure to state a claim upon which relief can be granted. The Plaintiff seeks to remand the case to state court based upon lack of complete diversity. Before it may determine the merits

---

[2]The Plaintiff's estoppel allegation is only against ANPAC. Thus, the estoppel argument will not bear on the Court's analysis of the claims against Brantley. (D.E. 1, Notice of Removal, Ex. 1 Compl. ¶ 56.)

3

of the Defendants' motion, the Court must first determine whether subject matter jurisdiction exists.

JURISDICTION ANALYSIS

A case initially filed in state court may be removed to federal court pursuant to 28 U.S.C. §§ 1441 and 1446: "Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court." 28 U.S.C. § 1441(a). For example, if there was complete diversity of citizenship between the Plaintiff and Defendants, the case could have been removed to federal court. See 28 U.S.C. § 1332(a)(1). When federal question jurisdiction is lacking, however, a case may be removed "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Here, based on the face of the amended complaint, removal would not be permitted because Brantley was a citizen of Tennessee. In this case, a defendant who is a citizen of Tennessee would normally preclude removal under 28 U.S.C. § 1441(b), but the Defendants herein argue that the joinder of Brantley by the Plaintiff was undertaken solely for the purpose of avoiding removal, either under § 1441(a) or (b).

The Sixth Circuit has recognized that "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." Coyne ex rel. Ohio v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted). However, the party removing the case must establish that the joinder was a subterfuge. Alexander v. Elec. Data Sys. Corp., 13 F.3d 940, 949 (6th Cir. 1994). To prove fraudulent joinder, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." Coyne, 183 F.3d at 493 (citing Alexander, 13 F.3d at 949). "There can be no fraudulent joinder unless it be clear

that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." Alexander, 13 F.3d at 949 (quoting Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968)). If there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved," then remanding the case to state court is appropriate. Id.; see also Coyne, 183 F.3d at 493 (stating that a "colorable basis for predicting that a plaintiff may recover against nondiverse defendants" requires remand); Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C., 176 F.3d 904, 907 (6th Cir. 1999) (holding that "the inquiry is whether [plaintiff] had at least a colorable cause of action against [the defendant]"). "Any disputed questions and facts and ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party." Alexander, 13 F.3d at 949 (citations omitted, alterations and emphasis added in the original). "All doubts as to the propriety of removal are resolved in favor of remand." Coyne, 183 F.3d at 493. A plaintiff's motive in joining nondiverse defendants is immaterial to determining whether joinder was fraudulent. Jerome-Duncan, Inc., 176 F.3d at 907 (citation omitted). Sainaam's claims are based in state law so the Court must look to the law of Tennessee to determine whether the individual Defendants were fraudulently joined. Id.

Because the question of jurisdiction in this case hinges on whether Brantley was fraudulently joined, the Court must separately analyze whether any of the Plaintiff's theories of recovery against Brantley provide an "arguably . . . reasonable basis for predicting that the state law might impose liability on the facts involved."[3] Alexander, 13 F.3d at 949.

---

[3]The Defendants' brief frames the issue simply as whether the claims against Defendant Brantley should be dismissed. This is not, however, the precise standard for determining fraudulent joinder, which also requires that the state law be clear. As a case cited in the Defendants' brief notes, "[t]he joinder of a resident Defendant may be deemed fraudulent for purposes of removal if the Plaintiff fails to state a cause of action against the resident Defendant and the lack of a cause of action is obvious according to the settled decisions of laws of the

5

I.  Breach of Contract

The parties apparently agree that Tennessee substantive law applies to the Plaintiff's claim for breach of contract against Brantley. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The Defendants argue that Tennessee's law of contracts and agency provides no reasonably arguable basis to find Brantley liable under the facts alleged by the Plaintiff. (D.E. 1, Mem. in Supp. of Notice of Removal, 2.) Specifically, the Defendants point to Holt v. American Progressive Life Insurance Co., where the Tennessee Court of Appeals noted that "a contract with a known agent for a disclosed principal is the contract of the principal unless circumstances show that the agent intended to be bound or assumed the obligations under the contract." 731 S.W.2d 923, 925 (Tenn. Ct. App. 1987) (citing Hammond v. Herbert Hood Co., 221 S.W.2d 98 (Tenn. 1948)). The court of appeals held that the agent of a disclosed principal insurance company is not liable under breach of contract for the principal's failure to pay insurance benefits. Id. at 925-26. The Defendants note that the complaint alleges that "Brantley was an authorized representative of ANPAC." (D.E. 1, Notice of Removal, Ex. 1 Compl. ¶ 14.) In light of this, the Defendants argue that, under clear and settled Tennessee law, the Plaintiff has not alleged facts that would support a breach of contract claim against Brantley, considering that he was ANPAC's agent. (D.E. 1, Def.'s Mem. in Supp. of Notice of Removal, 2.)

In its response, the Plaintiff argues that its contract claim does not arise from breach of the underlying insurance contract; rather, Brantley breached a second, independent contract to "procure . . . appropriate insurance coverage" for Plaintiff's business. (D.E. 5, Pl.'s Mem. in Opp., 6.) The

---

state." Ennis v. Queen Ins. Co., 364 F.Supp. 964, 966-67 (W.D. Tenn. 1973) (emphasis added) (quoting Bohanan v. Atchison, Topeka & Santa Fe Ry. Co., 289 F. Supp. 490, 493 (W.D. Okla. 1968); Dyer v. Burns, 257 F. Supp. 268, 270 (W.D. Okla. 1966)).

6

complaint alleges that the Plaintiff "contracted with Brantley to provide adequate and full insurance against perils and for personal and business losses," and this supposed contract was breached because ANPAC denied the Plaintiff's claims. (D.E. 1, Notice of Removal, Ex. 1 Compl. ¶ 50.)

Despite the Plaintiff's contention, it is well-settled in Tennessee that an insurance agent is not personally liable on an insurance contract formed while the agent was acting within the scope of the agency relationship, and, as here, the contracting parties understood that the agent was acting on behalf of a principal insurance company. Holt, 731 S.W.2d at 925. The Plaintiff's complaint clearly shows that all parties understood Brantley to be acting within the scope of his agency relationship for ANPAC throughout the disputed transaction.[4] Further, the complaint does not set forth the requisite elements of offer, acceptance, and intent to affect legal relations with regard to the alleged contract. Overstreet v. TRW Commercial Steering Div., 256 S.W.3d 626, 632 (Tenn. 2008) (citing 17 C.J.S. Contracts § 6b (2007)). The statement in the complaint–that the Plaintiff and Brantley had a binding contract–is a legal conclusion, not a factual allegation, and the Court should not assume legal conclusions in the complaint to be true. See Papasan v. Allain, 478 U.S. 265, 286 (1986) (stating that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); Steele v. UPS, Inc., 499 F.Supp.2d 1035, 1036-1037 (E.D. Tenn. 2007). Because the complaint does not present a reasonably arguable basis for a claim for breach of contract against Brantley under Tennessee law, the Defendants have met their burden of establishing fraudulent joinder with regard to the Plaintiff's contract claim.

II. Tennessee Consumer Protection Act and Negligence

---

[4]The complaint states that "in preparing Plaintiff's application for insurance, Brantley was acting within the ordinary course of his business as an agent of ANPAC." (D.E. 1, Notice of Removal, Ex. 1 Compl. ¶ 59.)

Because the Plaintiff alleges that Brantley's "grossly negligent actions" make him liable under both the Tennessee Consumer Protection Act ("TCPA") and its assertion of common law negligence, the two claims will be discussed together.[5] (D.E. 1, Notice of Removal, Ex. 1 Compl. ¶¶ 54(d), 58-66.)

The TCPA provides consumers a private right of action for any "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. §§ 47-18-104(a), 109(a)(1); see also Menuskin v. Williams, 145 F.3d 755, 767 (6th Cir. 1998). "The main purpose of the Act is to protect consumers, and it must be liberally construed to affect that purpose." Gaston v. Tenn. Farmers Mut. Ins. Co., 120 S.W.3d 815, 822 (Tenn. 2003). "In order to recover under the TCPA, the plaintiff must prove: (1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA; and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated. . . .'" Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. § 47-18-109(a)(1)). "The defendant's conduct need not be willful or even knowing, but if it is, the TCPA permits the trial court to award treble damages." Id. The Tennessee Supreme Court has held that the TCPA applies to the insurance industry under the broad "catch-all" provision that prohibits "engaging in any other act or practice which is deceptive to the consumer or to any other person." Myint v. Allstate Ins. Co., 970 S.W.2d 920, 925 (Tenn. 1998) (citing Tenn. Code Ann. § 47-18-104(b)(27) (1997)). Additionally, it should be noted

---

[5]The complaint also includes a claim for negligent representation. Tennessee does recognize a claim for economic loss resulting from negligent misrepresentation under section 552 of the Second Restatement of Torts. See John Martin Co. v. Morse/Diesel, Inc., 819 S.W.2d 428, 435 (Tenn. 1991). Although, the complaint is unclear as the what misrepresentation Brantley allegedly made. It simply states that the "Plaintiffs justifiably relied on Brantley's skill and expertise to their detriment." (D.E. 1, Notice of Removal, Ex. 1 Compl. ¶ 63.)

8

for the purpose of this case that Tennessee courts have adjudicated claims under the TCPA against insurance agents. See Ginn v. Am. Heritage Life Ins. Co., 173 S.W.3d 433 (Tenn. Ct. App. 2004) (though ultimately finding no unfair or deceptive trade practice had occurred for different reasons, the court of appeals discussed the trial court's award of TCPA damages against both an insurance company and the insurance salesperson individually).

Under Tennessee common law, a claim of negligence is established by proof of the following five elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate or legal cause." West v. E. Tenn. Pioneer Oil Co., 172 S.W.3d 545, 550 (Tenn. 2005) (quoting Coln v. City of Savannah, 966 S.W.2d 34, 39 (Tenn. 1998)). In this case, the parties' contention focuses on the element of duty. (D.E. 4, Def.'s Mot. to Dis., 5.) Under Tennessee law, "[t]he duty owed to the plaintiffs by the defendant is in all cases that of reasonable care under all of the circumstances." Id. (citing Doe v. Linder Const. Co., 845 S.W.2d 173, 177 (Tenn. 1992)). Reasonable care is determined by the "risk entailed through probable dangers attending the particular situation and is to be commensurate with the risk of injury." Id. The key inquiry is whether the resulting harm was foreseeable. Id. Whether a defendant owes a duty is a question of law for the court. Bradshaw v. Daniel, 854 S.W.2d 865, 869 (Tenn. 1993).

The Plaintiff alleges that Brantley violated the TCPA and was negligent because "[d]uring the application and underwriting process, Brantley failed to assist his customer in the accurate and complete application process to insure that they were afforded the insurance coverage that they needed for their store." (D.E. 1, Notice of Removal, Ex. 1 Compl. ¶ 59.) The Plaintiff further faults Brantley for failing to relay material information to ANPAC, including that the Plaintiff's previous

9

insurer declined to renew their plan and that the Plaintiff occasionally kept significant sums of cash in the store. (Id. at ¶¶ 60, 62.) Also, Sainaam accuses both Brantley and ANPAC of "unfair and deceptive claims practice." (Id. at ¶ 54(f).) Finally, the Plaintiff alleges that Brantley coaxed Rhea Shivani into omitting information, including descriptions of the previous theft claims, in her letter to ANPAC. (Id. at ¶ 61.)

The Defendants must present "sufficient evidence that [the Plaintiff cannot] establish[] a cause of action" against Brantley. Coyne, 183 F.3d at 493. In an attempt to meet this burden, the Defendants make several arguments. First, they reiterate that an agent is not liable under contract when acting on behalf of a disclosed principal.[6] (D.E. 7, Def.'s Response, at 4; D.E. 4, Def. Mot. to Dis., at 4-6.) This shield from contract liability, however, would not necessarily preclude liability under the TCPA or common law negligence. Under Tennessee, a principal may be vicariously liable for the tortious conduct of an agent under the doctrine of respondeat superior, but the agent also can be individually liable for his actions in the absence of some privilege. See, e.g., Johnson v.

---

[6]The Defendants point out that any information given to Brantley would be imputed to ANPAC. (D.E. 7, Def.'s Response, at 4.) However, the Defendants have presented no Tennessee case authority that stands for the proposition that when a principal is imputed with the knowledge of an agent, that agent is exonerated from liability in tort or under the TCPA. The Defendants have cited Triolo v. Treadwell & Harry, Inc., 371 S.W.2d 169 (Tenn. Ct. App. 1963), which is not factually similar. In Triolo, the plaintiff first sued the principal insurance company for failing to pay after her house burned, arguing that the house had not been vacant for sixty days in violation of the policy. Id. at 170-71. After receiving an adverse judgment in that suit, the plaintiff then brought another claim against the agent of the insurance company, arguing that the agent should be charged with the knowledge that her house was vacant at the time the policy was issued. Id. The court of appeals found that even if it were true that the agent knew the house was vacant, this knowledge would have been imputed to the principal and constituted a waiver of the sixty day provision against vacancy, which would have meant that the plaintiff should have been successful in her prior suit against the principal. However, the plaintiff had argued that previous case under a different theory and then failed to appeal. Id. at 173-74. The Triolo Court did not analyze the plaintiff's claim under the law of torts or the TCPA, and, as such, that case does not stand for the legal proposition for which the Defendants cite it.

LeBonheur Children's Med. Ctr., 74 S.W.3d 338, 345-46 (Tenn. 2005); Carr v. Robertson County, 29 S.W.3d 466, 474 (Tenn. 2000) (holding that "an employee working for a government agency, may be liable for malicious harassment"); see also 20-95 Personal Injury–Actions, Defenses, Damages, (MB) § 3.01[1] (2008) (stating that "[v]irtually all modern decisions agree that a servant is liable for his own tortious acts, regardless of whether they occur within the scope of his employment"). Thus, the mere fact that Brantley was acting as an agent for ANPAC would not necessarily absolve him from liability in tort or under the TCPA.

Second, the Defendants observe that Brantley was not involved in processing the disputed claim, which ANPAC refused to pay. (Id.) The Defendants are correct that because Brantley apparently did not handle the Plaintiff's claim, and the factual allegations of the complaint do not show a TCPA violation by him for "unfair and deceptive claims practice." (D.E. 1, Notice of Removal, Ex. 1 Compl. ¶ 54(f).) Although Brantley cannot be liable for his conduct in the claim assessment process, the complaint additionally alleges that Brantley was negligent in the application and underwriting process. This alleged negligence provides alternative grounds upon which the individual Defendant may be liable under the TCPA or Tennessee common law.

Third, the Defendants argue that Brantley owed no tort duty to the Plaintiff. (D.E. 7, Def.'s Response, at 4.) They cite to no Tennessee precedent clearly holding that an insurance agent does not owe a duty to an applicant of an insurance policy. In the absence of direct precedent, Tennessee law generally provides that Brantley would owe a duty of reasonable care to all foreseeable plaintiffs. West, 172 S.W.3d at 550. Arguably, it is reasonably foreseeable that an applicant could incur financial injury if an insurance agent incorrectly processes an

application or fails to submit all necessary information. This Court need not conclusively answer the question of duty, however. For the purpose of fraudulent joinder analysis, it is enough to say that whether an insurance agent owes a duty of care to a policy applicant creates a close question for which Tennessee law provides no clear answer. Alexander, 13 F.3d at 949 (holding that "[t]here can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law") (quoting Bobby Jones Garden Apartments, 391 F.2d at 176). The Court resolves ambiguities in the law in favor of the nonremoving party. Id.

Finally, the Defendants argue that even if Brantley owed the Plaintiff a duty, Kishore Shivani's comparative negligence, in failing to read the insurance contract before signing it, "constitutes negligence on the Plaintiff's part sufficient to relieve the Defendant Brantley of liability." (D.E. 7, Def.'s Response, at 5.) In McIntyre v. Balentine, 833 S.W.2d 52 (Tenn. 1992), the Tennessee Supreme Court abandoned the doctrine of contributory negligence in favor of a modified comparative negligence approach.[7] Under this system, the plaintiff's negligence in bringing about the harm does not automatically bar recovery, so long as the plaintiff's percentage of fault is less than the defendant's fault. Jones v. Idles, 114 S.W.3d 911, 913 (Tenn. 2003). Apportionment of fault is generally a fact-specific question that the trier of fact normally decides in Tennessee. Cf. Turner v. Jordan, 957 S.W.2d 815 (Tenn. 1997) (determining that a

---

[7]Though they are interrelated and both have been recognized, the Tennessee Supreme Court draws a distinction between comparative negligence and comparative fault. Comparative negligence is the "measure of the plaintiff's negligence in percentage terms used for the purpose of reducing the plaintiff's recovery from the defendant." Owens v. Truckstops of Am., 915 S.W.2d 420, 425 n. 7 (Tenn. 1996). Comparative fault is defined as "those principles which encompass the determination of how to apportion damage recovery among multiple or joint tortfeasors according to the percentage of fault attributed to those actors after reduction for the plaintiff's percentage of negligence." Id.

trial court should not reallocate the jury's determination of the percentages of fault).

Considering the facts alleged in the complaint, in appears that a reasonable juror could find that the Plaintiff's portion of fault (in failing to read the insurance application) was less than the Defendant's fault (in mishandling the insurance application). Recognizing that comparative negligence is a fact-intensive and multi-factored analysis, the Court cannot say that Tennessee law clearly dictates that Kishore Shivani's failure to read the insurance application precludes the Plaintiff from recovering. This fact would be relevant in a modified comparative negligence analysis, but it is insufficient to show, as a matter of law, that Brantley cannot be liable.

The Defendants cite to Giles v. Allstate Insurance Co., 871 S.W.2d 154, 156 (Tenn. Ct. App. 1993), which states that, in the absence of fraud, a person who

> fails to read the contract or otherwise to learn its contents, . . . signs the same at his peril and is estopped to deny his obligation, [and thus] will be conclusively presumed to know the contents of the contract, and must suffer the consequences of his own negligence.

Id. (citing Beasley v. Metropolitan Life Ins. Co., 229 S.W.2d 146, 148 (Tenn. 1950)). Giles addressed whether an insurance contract was void because the insured's application contained misrepresentations. Id. The court of appeals held that, even though the insured claimed she had not read the application, she was still responsible for misrepresentations in the document she had signed. Id. As with other cases relied on by the Defendants, the holding of Giles was rooted in contract law. A subsequent case from the Tennessee Court of Appeals addressed whether a defendant "should be immunized from liability under the Consumer Protection Act" because the plaintiff failed to read the contract. Dixon v. Bryan, No. 01A01-9707-CV-00371, 1998 Tenn. App. LEXIS 847, at *8 (Tenn. Ct. App. Dec. 15, 1998) (application for appeal denied on June 7, 1999). Noting that "[t]he terms of the Consumer Protection Act are quite broad and are to be

liberally construed to protect the consumer," the court of appeals answered that failing to read the contract did not bar the Plaintiff's action. Id. (citing Tenn. Code Ann. § 47-18-104 (1995)). The Dixon court discussed Giles but did not find it controlling in a TCPA analysis because Giles dealt with "whether the contract should be enforced," instead of whether the defendant violated the TCPA. Id.

In summary, the Court finds that the Defendants have failed to present sufficient evidence clearly showing "that there can be no recovery under the law of [Tennessee] on the cause alleged or on the facts in view of the law," and that the Plaintiff's complaint provides an "arguably . . . reasonable basis for predicting that" either the TCPA or Tennessee's law of negligence might support a claim against Brantley. Alexander, 13 F.3d at 949. Because the Defendants have failed to establish that Brantley was fraudulently joined, this suit lacks complete diversity, and subject matter jurisdiction under § 1332 is improper.

## CONCLUSION

For the reasons articulated herein, the Court hereby **GRANTS** the Plaintiff's motion to remand and will refrain from deciding the Defendants' motion to dismiss, which can be decided by the state court judge.

IT IS SO ORDERED this 16th day of September, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE